## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| VICTORIA MILLER, NATALIA BURAK, SATETTA HAMPTON, RALF LINDENLAUB, NATALIA BRATTCEVA, MAXIM MILCHMAN, AND THOMAS BRUMBELOE,<br><br>            Plaintiffs,<br><br>v.<br><br>CLOUD SOLUTIONS212, INC.; CARBON60 USA, INC.; EWT CLOUD SOLUTIONS, INC.; AND ANTHONY WILLIAMS,<br><br>            Defendants. | CIVIL NO. _____<br><br><br>**JURY TRIAL REQUESTED** |

## COMPLAINT

Plaintiffs Victoria Miller, Natalia Burak, Satetta Hampton, Ralf Lindenlaub, Natalia Brattceva, Maxim Milchman, and Thomas Brumbeloe (collectively, "Plaintiffs") file the following Complaint against Cloud Solutions212, Inc. ("Cloud Solutions"), Carbon60 USA, Inc. ("Carbon60"), EWT Cloud Solutions, Inc. ("EWT") and Anthony Williams ("Williams") (Cloud Solutions, Carbon60, EWT and Williams, collectively, "Defendants"), seeking damages and other relief as set forth below.

## Nature of Complaint

1.

This action sets forth claims for breach of contract, promissory estoppel, unjust enrichment, fraud, and intentional infliction of emotional distress under Georgia state law, and for various violations of the federal Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq*. ("FLSA").  Plaintiffs, each of whom is a current or former employee of one or more of the corporate Defendants and of Defendant Williams, each performed services on a full- or nearly-full-time basis for a period ranging from several weeks to seven months or more, and not one Plaintiff was ever paid even one cent for such work.  In reliance on regular and repeated (near-daily) promises by Defendant Williams to pay them everything they were due, Plaintiffs continued to work and refrained from seeking or obtaining alternative employment.  Additionally, some incurred hundreds or thousands of dollars of business expenses for which reimbursement was promised but never paid.  Defendant Williams's representations to Plaintiffs were, however, false and fraudulent, as he has never paid any of them anything that they are due.  Accordingly, Plaintiffs seek declaratory relief and actual and liquidated damages for Defendants' joint and willful failure to pay federally mandated wages to each of the Plaintiffs.  Plaintiffs also seek all recoverable damages, including actual, compensatory, consequential and punitive damages, where appropriate, under state

law for breach of contract, promissory estoppel, fraud and intentional infliction of emotional distress.

## **The Parties**

2.

Plaintiff Victoria Miller ("Miller") is a citizen of the United States and a resident of the State of Florida.  Miller submits herself to the jurisdiction of this Court.

3.

Plaintiff Natalia Burak ("Burak") is a lawful permanent resident of the United States and a resident of the State of Georgia.  Burak submits herself to the jurisdiction of this Court.

4.

Plaintiff Satetta Hampton ("Hampton") is a citizen of the United States and a resident of the State of Florida.  Hampton submits herself to the jurisdiction of this Court.

5.

Plaintiff Ralf Lindenlaub ("Lindenlaub") is a lawful permanent resident of the United States and a resident of the State of Florida.  Lindenlaub submits himself to the jurisdiction of this Court.

6.

Plaintiff Natalia Brattceva ("Brattceva") is a lawful permanent resident of the United States and a resident of the State of Florida.  Brattceva submits herself to the jurisdiction of this Court.

7.

Plaintiff Maxim Milchman ("Milchman") is a lawful permanent resident of the United States and a resident of the State of California.  Milchman submits himself to the jurisdiction of this Court.

8.

Plaintiff Thomas Brumbeloe ("Brumbeloe") is a citizen of the United States and a resident of the State of Georgia.  Brumbeloe submits himself to the jurisdiction of this Court.

9.

Defendant EWT is a Delaware corporation that transacted business in Georgia, on information and belief, between approximately December 2017 and March 2018.  EWT is subject to service of process via its registered agent, Harvard Business Services, Inc., 16192 Coastal Highway, Lewes, DE 19958, or through Defendant Williams who, on information and belief, is its officer and/or managing or general agent.

10.

Defendant Carbon60 is a Delaware corporation that transacted business in Georgia, on information and belief, between approximately February 2018 and May 2018.  Carbon60 is subject to service of process via its registered agent, Harvard Business Services, Inc., 16192 Coastal Highway, Lewes, DE 19958, or through Defendant Williams who, on information and belief, is its officer and/or managing or general agent.

11.

Defendant Cloud Solutions is a Delaware corporation that began transacting business in Georgia, on information and belief, in approximately April or May 2018, and continues operating at present.  Cloud Solutions is subject to service of process via its registered agent, Harvard Business Services, Inc., 16192 Coastal Highway, Lewes, DE 19958, or through Defendant Williams who, on information and belief, is its officer and/or managing or general agent.

12.

On information and belief, Defendant Williams is the majority or sole owner of EWT, Carbon60, and Cloud Solutions.  Defendant Williams is subject to service of process at his current residence, 360 Pharr Road, Apartment 158, Atlanta, Fulton County, Georgia 30305, or wherever he may be found.

## Jurisdiction and Venue

### 13.

Plaintiffs' FLSA claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 29 U.S.C. § 216(b).  This court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

### 14.

This Court has personal jurisdiction over EWT because EWT transacted business in Georgia, entered into contracts with Plaintiffs through its agent in the state of Georgia, employed certain of the Plaintiffs in Georgia, and Plaintiffs' claims arise directly out of EWT's Georgia-based business activities.

### 15.

This Court has personal jurisdiction over Carbon60 because Carbon60 transacted business in Georgia, entered into contracts with Plaintiffs through its agent in the state of Georgia, employed the Plaintiffs in Georgia, and Plaintiffs' claims arise directly out of Carbon60's Georgia-based business activities.

### 16.

This Court has personal jurisdiction over Cloud Solutions because Cloud Solutions transacts business in Georgia, entered into contracts with Plaintiffs through its agent in the state of Georgia, employed the Plaintiffs in Georgia, and

Plaintiffs' claims arise directly out of Cloud Solutions's Georgia-based business activities.

17.

This Court has personal jurisdiction over Williams individually because he is a resident of the State of Georgia, Fulton County.  Additionally, this court has jurisdiction over Williams because his tortious acts giving rise to the Plaintiffs' claims took place in Georgia.

18.

This is an appropriate venue for all of Plaintiffs' claims pursuant to 28 U.S.C. § 1391 as the judicial district in which the one or more Defendants reside and in which the events and omissions giving rise to Plaintiffs' claims occurred.

## The Facts

### Defendant Williams and His Formation of the Defendant Companies

19.

Over the span of his multi-decade working life, Defendant Williams has been employed by a number of large companies providing information technology and technology-consulting services.

20.

Companies for which Defendant Williams has worked include, on information and belief, Ernst & Young, Delloite & Touche, and various entities

affiliated with the Coca-Cola Company, including Coca-Cola North America (CCNA), Coca-Cola Beverages Florida (CCBF) and Coke One North America (CONA).

21.

In 2013, Defendant Williams worked for CONA based in Atlanta, Georgia, where he met Plaintiff Brumbeloe.  In 2017, Defendant Williams worked for CCBF based in Tampa, Florida, where he met Plaintiff Miller.  During 2017, he left CCBF to go to a company called IT Authorities, and he recruited Plaintiffs Miller and Brumbeloe to go with him.

22.

On information and belief, Defendant Williams decided during the latter part of 2017 to leave IT Authorities in order to start his own technology consulting company providing cloud-based SAP services to a target customer base of large national and multi-national corporations.

23.

Defendant Williams, in partnership with two other individuals, formed Defendant EWT for the ostensible purpose of providing the cloud-based SAP services as described in the preceding paragraph.  He recruited Plaintiffs Miller and Brumbeloe to come with him from IT Authorities to his new start-up, EWT.

24.

EWT was incorporated in Delaware on December 4, 2017.

25.

The principal place of business of EWT was at all times in Georgia, though EWT never completed the process to become qualified to transact business in Georgia as a foreign corporation.

26.

EWT was never properly capitalized and never had sufficient funds to meet its financial obligations.

27.

EWT entered into written employment contracts with Plaintiffs Miller and Brumbeloe, but never paid them any of the compensation they were promised under their employment contracts.

28.

Plaintiffs Miller and Brumbeloe performed services as employees of Defendant EWT but were never paid anything for any of the hours that they worked.

29.

EWT was a sham corporation and its corporate form should be disregarded by this Court.

30.

In addition to the corporation EWT being liable to Plaintiffs as set forth herein, Defendant Williams is personally liable to Plaintiffs for the contractual obligations to which he committed allegedly on behalf of EWT and for his extra-contractual and tortious wrongdoing relative to Plaintiffs.

31.

After operating under the corporate name EWT for several months, Defendant Williams incorporated Carbon60, ostensibly for the same purpose – *i.e.* to operate a business providing cloud-based SAP technology services.  On information and belief, he did so pursuant to an agreement with an established Canadian company called Carbon60, and the plan was for Williams to operate the US arm of the Canadian Carbon60 company.

32.

Carbon60 (USA) was incorporated in Delaware on February 15, 2018.

33.

The principal place of business of Carbon60 was at all times in Georgia, though Carbon60 never completed the process to become qualified to transact business in Georgia as a foreign corporation.

34.

Carbon60 was never properly capitalized and never had sufficient funds to meet its financial obligations.

35.

Carbon60 entered into written employment contracts with Plaintiffs Miller, Brumbeloe, Lindenlaub, Burak, Brattceva, and Milchman, but never paid any of them any of the compensation they were promised under their employment contracts.

36.

Defendant Williams signed each Plaintiff's contract with Carbon60 and conducted all negotiations as to the employment of each Plaintiff.

37.

Each of the Plaintiffs who contracted with Carbon60 performed services as employees of Defendant Carbon60 but not one was ever paid anything for any of the hours that they worked.

38.

Carbon60 was a sham corporation and its corporate form should be disregarded by this Court.

39.

In addition to the corporation Carbon60 being liable to Plaintiffs as set forth herein, Defendant Williams is personally liable to each of the Plaintiffs for the contractual obligations to which he committed allegedly on behalf of Carbon60 and for his extra-contractual, statutory and tortious wrongdoing relative to Plaintiffs.

40.

Carbon60 was never properly capitalized and never had sufficient funds to meet its financial obligations.

41.

After operating under the corporate name Carbon60 for several months, Defendant Williams incorporated Cloud Solutions, ostensibly for the same purpose – *i.e.* to operate a business providing cloud-based SAP technology services.

42.

Cloud Solutions was incorporated in Delaware on March 22, 2018.

43.

The principal place of business of Cloud Solutions was at all times (and remains) in Georgia, though Cloud Solutions has yet to complete the process to become qualified to transact business in Georgia as a foreign corporation.

44.

Cloud Solutions entered into written employment contracts with Plaintiffs Brumbeloe, Hampton, Lindenlaub, Burak, Brattceva, and Milchman, and an oral employment contract with Plaintiff Miller, but never paid any of them any of the compensation they were promised under their employment contracts.

45.

Defendant Williams signed each Plaintiff's contract with Cloud Solutions and conducted all negotiations as to the employment of each Plaintiff.

46.

Each of the Plaintiffs performed services as employees of Defendant Cloud Solutions but not one was ever paid anything for any of the hours that they worked.

47.

Cloud Solutions has never been properly capitalized and never had sufficient funds to meet its financial obligations.

48.

Cloud Solutions was a sham corporation and its corporate form should be disregarded by this Court.

49.

In addition to the corporation Cloud Solutions being liable to Plaintiffs as set forth herein, Defendant Williams is personally liable to each of the Plaintiffs for

the contractual obligations to which he committed allegedly on behalf of Cloud

Solutions and for his extra-contractual, statutory, and tortious wrongdoing relative

to Plaintiffs.

<u>Plaintiff Miller's Employment by Defendants</u>

50.

Defendant Williams, acting on behalf of himself and/or EWT, hired Plaintiff

Miller in late December 2017 to work as a Product Marketing Manager beginning

on or about January 3, 2018.

51.

Williams and Miller were acquaintances because they worked together in the

IT SAP Department at CCBF between approximately May 2016 and August 2017.

He then offered Miller a position when he left CCBF to go to work for IT

authorities, which Miller accepted.  They both worked for IT Authorities from

August 2017 until December 2017, when Williams left to form EWT.

52.

Defendant Williams recruited Plaintiff Miller to work for him and/or EWT.

53.

Plaintiff Miller had a positive employment record as an employee of IT

Authorities, and although she was an at-will employee there, her prospects for

continued long-term employment and future advancement there were good.

54.

Defendant Williams had knowledge of Plaintiff Miller's good employment record at Coca-Cola and IT Authorities when he recruited her to come to work for him.  He offered to match her salary with promises of advancement and benefits in an effort to lure her away from her job and come to work for him.

55.

Plaintiff Miller relied on Defendant Williams's representations regarding her prospects for employment when he recruited her away from Coca-Cola and IT Authorities.

56.

Plaintiff Miller would not have left her job at IT Authorities in January 2018 but for Defendant Williams's offer to employ her at the same salary, plus benefits, with opportunities for advancement.

57.

Plaintiff Miller's reliance on Defendant Williams's offer of employment was reasonable.

58.

Plaintiff Miller worked for Defendants between January 3, 2018 and April 16, 2018.

59.

Plaintiff Miller ostensibly worked for EWT from January 3 to approximately mid-February 2018, for Carbon60 from approximately mid-February to mid-March, and for Cloud Solutions from mid-March to April 16, 2018, but the employment transitions were seamless and not markedly visible to her as an employee.  She worked for Defendant Williams throughout that entire period, under whichever corporate shell he was then purporting to operate.

60.

Plaintiff Miller worked for Williams and his various corporate shells on a full-time basis, working 40 hours, more or less, each week throughout her employment.

61.

Plaintiff Miller worked remotely from her home in Lakeland, Florida.

62.

Defendants never kept any records of the hours Plaintiff Miller actually worked.

63.

Miller worked for one or more or all of the Defendants for over 14 weeks.

64.

Defendant Williams promised to pay Plaintiff Miller a salary of $75,000 annually for her services, but neither he, nor any of the Defendant companies, nor anyone else, ever paid her anything for her work.

65.

Plaintiff Miller regularly and repeatedly asked Defendant Williams when she would be paid, and he regularly and repeatedly told her that she would be paid soon.  He always had some reason why she had not been paid yet and he always promised again that she would be paid everything she was due soon.

66.

Plaintiff Miller sent Defendant Williams countless text and email messages inquiring about whether she would be paid all of her overdue back wages soon, and if so when.  Although he did not always respond to her inquiries, when he did respond he always assured her that she would be paid very soon.  In reliance on those assurances, she chose to remain his employee and to refrain from seeking alternative employment.

67.

In addition to instances on which Plaintiff Miller inquired specifically about when she would be paid, Defendant Williams initiated numerous communications with all then-current employees of whichever entity through which he was then

17

purporting to operate, each time promising that they would be paid soon – usually the next day.  Those promises were never fulfilled.

68.

In a last desperate attempt to convince Defendant Williams to pay her the substantial back compensation that she was then due, Plaintiff Miller informed Defendant Williams via a text message in April 2018 that if he did not pay her, she would be forced to seek legal help to get him to pay her what she was due.

69.

Plaintiff Miller's statement that she would seek legal assistance in relation to her unpaid wages constitutes protected activity under the Fair Labor Standards Act.

70.

In response to Plaintiff Miller's complaint that she had still not been paid anything even though she'd been working over three months, and her statement that she would seek legal assistance to get paid if needed, Defendant Williams terminated Plaintiff Miller's employment.

71.

As a result of Defendants' failure and/or refusal to pay her any of the compensation which she was due, and Defendants' retaliatory termination of her employment, Plaintiff Miller suffered great financial hardship.

72.

As a result of Defendants' failure and/or refusal to pay her the compensation she was due, Defendant Williams' continued false representations to her regarding his intention to pay her soon, and Defendants' retaliatory termination of her employment,  Plaintiff Miller incurred substantial debt, she was forced to borrow money from friends and family, her relationships with friends and family (including her husband) were strained, and she suffered substantial anxiety, loss of sleep, and emotional and mental distress.

<u>Plaintiff Burak's Employment by Defendants</u>

73.

Defendant Williams, acting on behalf of himself and/or Carbon60, hired Plaintiff Burak in March 2018 to work as the Controller beginning on or about March 12, 2018.

74.

Williams recruited Burak to work for him after he learned about her and became acquainted with her through his wife.

75.

Throughout the time that Williams recruited Burak to come work for him, she had a good job working for Lathem Time Corporation earning an annual salary of $72,000 plus benefits, with opportunities for future advancement.

76.

Plaintiff Burak had a positive employment record as an employee of Lathem Time, and although she was an at-will employee there, her prospects for continued long-term employment and future advancement there were good.

77.

Defendant Williams had knowledge of Plaintiff Burak's good employment record at Lathem Time when he recruited her to come to work for him.  He offered her a salary of $90,000, which was substantially more than she was earning at Lathem Time, in an effort to lure her away from her job and come to work for him.

78.

Plaintiff Burak relied on Defendant Williams's representations regarding her prospects for employment when he recruited her away from Lathem Time.

79.

Plaintiff Burak would not have left her job at Lathem Time in March 2018 but for Defendant Williams's offer to employ her at the same salary, plus benefits, with opportunities for advancement.

80.

Plaintiff Burak's reliance on Defendant Williams's offer of employment was reasonable.

81.

Defendant Williams hired Plaintiff Burak notwithstanding, and with full knowledge, that he had not been able to pay any of his employees for nearly three months.   Yet, he never informed Plaintiff Burak that he had not paid any of his employees.

82.

Defendant Williams had no apparent present intention to pay Plaintiff Burak any of what he promised at the time he hired her.

83.

Plaintiff Burak worked for Defendants between March 12, 2018 and May 3, 2018.

84.

Plaintiff Burak ostensibly worked for Carbon60 from March 12 until Carbon60 became Cloud Solutions, where she remained until her voluntary resignation due to Williams' continued refusal to pay her on May 3, 2018, but the employment transitions were seamless and not markedly visible to her as an employee.  She worked for Defendant Williams throughout that entire period, under whichever corporate shell he was then purporting to operate.

85.

Plaintiff Burak worked for Williams and his various corporate shells on a full-time basis, working 40 hours, more or less, each week throughout her employment.

86.

Defendants never kept any records of the hours Plaintiff Burak actually worked.

87.

Burak worked for one or more of the Defendants for approximately 7 weeks.

88.

Defendant Williams promised to pay Plaintiff Burak a salary of $90,000 annually for her services, but neither he, nor any of the Defendant companies, nor anyone else, ever paid her anything for her work.

89.

Plaintiff Burak regularly and repeatedly asked Defendant Williams when she would be paid, and he regularly and repeatedly told her that she would be paid soon.  He always had some reason why she had not been paid yet and he always promised again that she would be paid everything she was due soon.

90.

Plaintiff Burak sent Defendant Williams countless text and email messages inquiring about whether she would be paid all of her overdue back wages soon, and if so when.  Although he did not always respond to her inquiries, when he did respond he always assured her that she would be paid very soon.  In reliance on those assurances, she chose to remain his employee and to refrain from seeking alternative employment.

91.

As a result of Defendants' failure and/or refusal to pay her any of the compensation which she was due, Plaintiff Burak suffered great financial hardship.

92.

As a result of Defendants' failure and/or refusal to pay her the compensation she was due, and Defendant Williams' continued false representations to her regarding his intention to pay her soon, Plaintiff Burak experienced financial difficulty, was forced to cash in her 401(k) retirement account in order to have money on which to live, and she suffered substantial anxiety, loss of sleep, and emotional and mental distress.

93.

As a result of Defendants' failure and/or refusal to pay her the compensation she was due, Plaintiff Burak reached a breaking point where she could no longer

afford to work for him anymore.  She therefore resigned her employment as of May 3, 2018 so that she would have more time available to seek alternative employment that would actually pay her.  As of the date of her resignation, Williams continued to assure her that she would be paid all of the back salary and expense reimbursements that she was due, but as of the date of filing this Complaint, she still had not been paid.

94.

Plaintiff Burak was not able to find immediate employment to replace her income and lost additional income as a result.  That lost income is attributable to her reasonable reliance on Defendants' offer to pay her a salary plus benefits.

Plaintiff Hampton's Employment by Defendants

95.

Defendant Williams, acting on behalf of himself and/or Cloud Solutions, hired Plaintiff Hampton in April 2018 to work as the Director of Methodology & Process beginning on or about April 16, 2018.

96.

Throughout the time that Williams recruited Hampton to come work for him, she had a good job earning an annual salary of $80,000 plus benefits, with opportunities for future advancement.

24

97.

Plaintiff Hampton had a two-year positive employment record at her prior job and although she was an at-will employee there, her prospects for continued long-term employment and future advancement there were good.

98.

Defendant Williams had knowledge of Plaintiff Hampton's good employment record at her current employer when he recruited her to come to work for him.  He offered her more salary with opportunities for advancement in an effort to lure her away from her job and come to work for him.

99.

Plaintiff Hampton relied on Defendant Williams's representations regarding her prospects for employment when he recruited her.

100.

Plaintiff Hampton would not have left her job in April 2018 but for Defendant Williams's offer to employ her at the same salary, plus benefits, with opportunities for advancement.

101.

Plaintiff Hampton's reliance on Defendant Williams's offer of employment was reasonable.

102.

Defendant Williams hired Plaintiff Hampton notwithstanding, and with full knowledge, that he had paid any of his employees for over three months.   Yet, he never informed Plaintiff Hampton that he had not paid any of his employees.

103.

Defendant Williams had no apparent present intention to pay Plaintiff Hampton any of what he promised at the time he hired her.

104.

Plaintiff Hampton worked for Defendants Williams and Cloud Solutions between approximately April 16, 2018 and May 4, 2018.

105.

Plaintiff Hampton resigned her employment when she learned that no one had been paid while working there for months – a fact of which she was not aware until after she had started work.

106.

Defendants never kept any records of the hours Plaintiff Hampton actually worked.

107.

Hampton worked for Defendants Williams and Cloud Solutions for just over two (2) weeks.

108.

Defendant Williams promised to pay Plaintiff Hampton a salary of $117,000 annually for her services, but neither he, nor any of the Defendant companies, nor anyone else, ever paid her anything for her work.

109.

Defendant Williams regularly and repeatedly promised to Hampton and other Plaintiffs that he would pay them soon, often the next day, but he never paid them.

110.

As a result of Defendants' failure and/or refusal to pay her any of the compensation which she was due, Plaintiff Hampton suffered great financial hardship.

111.

As a result of Defendants' failure and/or refusal to pay her the compensation she was due, and Defendant Williams' continued false representations to her regarding his intention to pay her soon, Plaintiff Hampton incurred substantial debt, she was forced to borrow money from friends and family, her relationships with friends and family were strained, and she suffered substantial anxiety, loss of sleep, and emotional and mental distress.

112.

Plaintiff Hampton was not able to find immediate employment to replace her income and lost additional income as a result. That lost income is attributable to her reasonable reliance on Defendants' offer to pay her a salary plus benefits.

<u>Plaintiff Lindenlaub's Employment by Defendants</u>

113.

Defendant Williams, acting on behalf of himself and/or Carbon60, hired Plaintiff Lindenlaub in February 2018 to work as the Chief Technology Officer beginning on or about February 8, 2018.

114.

Williams promised Plaintiff Lindenlaub an annual salary of $200,000.00 plus benefits including profit sharing in the company.

115.

Plaintiff Lindenlaub relied on Defendant Williams' promises relative to his employment at an annual salary of $200,000.00 plus benefits including profit sharing in the company, and refrained from seeking alternative employment in reliance on Defendant Williams' promises.

116.

Plaintiff Lindenlaub's reliance on Defendant Williams's offer of employment was reasonable.

117.

Plaintiff Lindenlaub worked for Defendants between February 8, 2018 and May 31, 2018.

118.

Plaintiff Lindenlaub ostensibly worked for Carbon60 from February 8 until Carbon60 became Cloud Solutions, where he remained until his voluntary resignation on May 31, 2018 due to Williams' continued refusal to pay him any salary, benefits, or expense reimbursements, but the employment transitions were seamless and not markedly visible to him as an employee.  He worked for Defendant Williams throughout that entire period, under whichever corporate shell he was then purporting to operate.

119.

Plaintiff Lindenlaub worked for Williams and his various corporate shells on a full-time basis, working 40 hours, more or less, each week throughout his employment.

120.

Defendants never kept any records of the hours Plaintiff Lindenlaub actually worked.

121.

Lindenlaub worked for one or more or all of the Defendants for approximately 16 weeks.

122.

Defendant Williams promised to pay Plaintiff Lindenlaub a salary of $200,000 annually for his services, plus benefits including profit sharing, but neither Williams, nor any of the Defendant companies, nor anyone else, ever paid him anything for his work.

123.

Lindenlaub incurred business expenses on his personal credit card during his employment with Defendants, totaling approximately $5,000.00, for which he was promised reimbursement but never repaid.

124.

Plaintiff Lindenlaub regularly and repeatedly asked Defendant Williams when he would be paid, and Williams regularly and repeatedly told Lindenlaub and other Plaintiffs that they would be paid soon.  Williams always had some reason why Plaintiffs had not been paid yet and he always promised again that they would be paid everything they were due soon.

125.

Plaintiff Lindenlaub sent Defendant Williams countless text and email messages inquiring about when he would be paid all of his overdue back wages and reimbursements.  Although he did not always respond to Lindenlaub's inquiries, when Williams did respond he always assured him that he would be paid very soon.  In reliance on those assurances, Lindenlaub chose to remain Williams's employee and to refrain from seeking alternative employment.

126.

As a result of Defendants' failure and/or refusal to pay Lindenlaub any of the compensation and reimbursements which he was due, Plaintiff Lindenlaub suffered great financial hardship.

127.

As a result of Defendants' failure and/or refusal to pay him the compensation he was due, and Defendant Williams' continued false representations regarding his intention to pay soon, Plaintiff Lindenlaub incurred substantial debt and suffered substantial anxiety, loss of sleep, and emotional and mental distress.

128.

As a result of Defendants' failure and/or refusal to pay him the compensation he was due, Plaintiff Lindenlaub reached a breaking point where he

could no longer work for Williams anymore.  He therefore resigned his

employment as of May 31, 2018.  As of the date of his resignation, Williams

continued to assure Lindenlaub that he would be paid all of the back salary and

expense reimbursements that he was due, but as of the date of filing this

Complaint, he still had not been paid.

<u>Plaintiff Brattceva's Employment by Defendants</u>

129.

Defendant Williams, acting on behalf of himself and/or Carbon60, hired

Plaintiff Brattceva in March 2018 to work as the Material Management Consultant

beginning on or about April 2, 2018.

130.

At the time Williams recruited Brattceva, she was living in her home country

of Russia, a fact of which Williams was aware.

131.

In order to accept employment from Williams, Brattceva had to move

herself and her children from Russia to the United States.  She made that move in

reliance on Defendants' offer of employment to include a salary of $80,000

annually plus benefits.

132.

Plaintiff Brattceva would not have moved from Russia to Florida in March 2018 but for Defendant Williams's offer to employ her at a salary of $80,000 annually, plus benefits, with opportunities for advancement.

133.

Plaintiff Brattceva's reliance on Defendant Williams's offer of employment was reasonable.

134.

Defendant Williams hired Plaintiff Brattceva notwithstanding, and with full knowledge, that he had paid any of his employees for over three months.   Yet, he never informed Plaintiff Brattceva that he had not paid any of his employees.

135.

Defendant Williams had no apparent present intention to pay Plaintiff Brattceva any of what he promised at the time he hired her.

136.

Plaintiff Brattceva worked for Defendants beginning April 2, 2018 and continuing to the date of filing of this Complaint.

137.

Plaintiff Brattceva ostensibly worked for Carbon60 from April 2 until Carbon60 became Cloud Solutions, but the employment transitions were seamless

and not markedly visible to her as an employee.  She worked for Defendant Williams throughout that entire period, under whichever corporate shell he was then purporting to operate.

138.

Plaintiff Brattceva worked for Williams and his various corporate shells on a full-time basis, working 40 hours, more or less, each week throughout her employment.

139.

Defendants never kept any records of the hours Plaintiff Brattceva actually worked.

140.

Brattceva remains employed by Defendants as of the date of filing of this Complaint, even though she has not been paid, because she continues to hope that she will eventually be paid and has not yet found alternative employment.

141.

Defendant Williams promised to pay Plaintiff Brattceva a salary of $80,000 annually for her services, but neither he, nor any of the Defendant companies, nor anyone else, ever paid her anything for her work.

142.

Defendant Williams has repeatedly represented to Plaintiff Brattceva and others, via email, text message, phone call, and other modes of communication, that she and the other Plaintiffs would be paid soon.

143.

Defendant Williams' representations regarding his intention to pay Plaintiff Brattceva and other Plaintiffs were false.

144.

Plaintiff Brattceva also incurred over $700.00 of business expenses for which Defendant Williams promised reimbursement by himself and/or the corporate Defendants, but Plaintiff Brattceva has never been reimbursed for those expenses.

145.

As a result of Defendants' failure and/or refusal to pay her any of the compensation and reimbursements which she is due, Plaintiff Brattceva has suffered  and continues to suffer great financial hardship.

146.

As a result of Defendants' failure and/or refusal to pay her the compensation and reimbursements she is due, and Defendant Williams' continued false representations to her regarding his intention to pay her soon, Plaintiff Brattceva

has incurred substantial debt, she was forced to borrow money from friends and family, her relationships with friends and family were strained, and she suffered substantial anxiety, loss of sleep, and emotional and mental distress.

<u>Plaintiff Brumbeloe's Employment by Defendants</u>

147.

Defendant Williams, acting on behalf of himself and/or EWT, hired Plaintiff Brumbeloe in January 2018 to work as the Operations Manager beginning on or about February 8, 2018, and later changed his title to VP Operations.

148.

Williams promised Plaintiff Brumbeloe an annual salary of $157,000.00 plus benefits.

149.

Plaintiff Brumbeloe had worked with Defendant Williams through several different entities over the years preceding Brumbeloe's hire by Williams as to EWT.  They met working on a project for Coke One North America in 2013 and 2014.  In 2017, Defendant Williams hired Brumbeloe through the JDC Group out of Atlanta, Georgia to perform services on a contract basis for IT Authorities, whom then employed Williams.  Then, when Williams decided to start EWT in late 2017, he invited Brumbeloe to join him.

150.

Plaintiff Brumbeloe relied on Defendant Williams' promises relative to his employment at an annual salary of $157,000.00 plus benefits, and refrained from seeking alternative employment in reliance on Defendant Williams' promises.

151.

Plaintiff Brumbeloe's reliance on Defendant Williams's offer of employment was reasonable.

152.

Plaintiff Brumbeloe has worked for Defendants since January 8, 2018. As of the date of filing of this Complaint Brumbeloe remains employed by Defendants Williams and Cloud Solutions.

153.

Plaintiff Brumbeloe ostensibly worked for EWT from January 8 to approximately mid-February 2018, for Carbon60 from approximately mid-February to mid-March, and for Cloud Solutions from mid-March to the present, but the employment transitions were seamless and not markedly visible to him as an employee. He worked for Defendant Williams throughout that entire period, under whichever corporate shell he was then purporting to operate.

154.

Defendant Williams regularly said to Plaintiff Brumbeloe and others, "You don't work for EWT. You don't work for Carbon60. It doesn't matter what we're called. You work for Tony Williams."

155.

Plaintiff Brumbeloe worked for Williams and his various corporate shells on a full-time basis, working 40 hours, more or less, each week throughout his employment.

156.

Defendants have never kept any records of the hours Plaintiff Brumbeloe actually worked.

157.

Brumbeloe worked for one or more or all of the Defendants for over seven months.

158.

Defendant Williams promised to pay Plaintiff Brumbeloe a salary of $157,000 annually for his services, plus benefits, but neither Williams, nor any of the Defendant companies, nor anyone else, ever paid him anything for his work.

159.

Brumbeloe incurred business expenses on his personal credit card during his employment with Defendants, totaling over $3,100.00, for which he was promised reimbursement but never repaid.

160.

Plaintiff Brumbeloe regularly and repeatedly asked Defendant Williams when he would be paid, and Williams regularly and repeatedly told Brumbeloe and other Plaintiffs that they would be paid soon.  Williams always had some reason why Plaintiffs had not been paid yet and he always promised again that they would be paid everything they were due soon.

161.

Plaintiff Brumbeloe sent Defendant Williams countless text and email messages inquiring about when he would be paid all of his overdue back wages and reimbursements.  Although he did not always respond to Brumbeloe's inquiries, when Williams did respond he always assured him that he would be paid very soon.  In reliance on those assurances, Brumbeloe chose to remain Williams's employee and to refrain from seeking alternative employment.

162.

As a result of Defendants' failure and/or refusal to pay Brumbeloe any of the compensation and reimbursements which he was due, Plaintiff Brumbeloe suffered great financial hardship.

163.

As a result of Defendants' failure and/or refusal to pay him the compensation he was due, and Defendant Williams' continued false representations regarding his intention to pay soon, Plaintiff Brumbeloe incurred substantial debt and suffered substantial anxiety, loss of sleep, and emotional and mental distress.  The stress and anxiety that Brumbeloe suffered were exacerbated when his wife suffered a heart attack on May 7, 2018, by which time he had been working without pay for Defendant Williams and his various corporate-named shells for 4-5 months.  His wife's doctors indicated that her own stress over the situation was likely a contributing factor in her heart attack.

164.

Despite repeated acknowledgements of the debt by Defendant Williams and promises to pay it, as of the date of filing this Complaint, Brumbeloe still had not been paid.

<u>Plaintiff Milchman's Employment by Defendants</u>

165.

Defendant Williams, acting on behalf of himself and/or Cloud Solutions, hired Plaintiff Milchman in March 2018 to work as the Director of Program and Project Management beginning on or about March 12, 2018.

166.

Williams promised Plaintiff Milchman an annual salary of $190,000.00 plus benefits.

167.

Plaintiff Milchman relied on Defendant Williams' promises relative to his employment at an annual salary of $190,000.00 plus benefits, and refrained from seeking alternative employment in reliance on Defendant Williams' promises.

168.

Plaintiff Milchman's reliance on Defendant Williams's offer of employment was reasonable.

169.

Plaintiff Milchman worked for Defendants beginning March 12, 2018 and remains an employee of Defendants today.

170.

Plaintiff Milchman ostensibly worked for Carbon60 from March 12 until Carbon60 became Cloud Solutions, where he remains employed as of the date of filing this Complaint, but the employment transitions were seamless and not markedly visible to him as an employee.  He worked for Defendant Williams throughout that entire period, under whichever corporate shell he was then purporting to operate.

171.

Plaintiff Milchman worked for Williams and his various corporate shells on a full-time basis, working 40 hours, more or less, each week throughout his employment.

172.

Defendants have never kept any records of the hours Plaintiff Milchman actually worked.

173.

Milchman has worked for one or more or all of the Defendants for nearly five months as of the filing of this Complaint.

174.

Defendant Williams promised to pay Plaintiff Milchman a salary of $190,000 annually for his services, plus benefits, but neither Williams, nor any of the Defendant companies, nor anyone else, ever paid him anything for his work.

175.

Plaintiff Milchman regularly and repeatedly asked Defendant Williams when he would be paid, and Williams regularly and repeatedly told Milchman and other Plaintiffs that they would be paid soon. Williams always had some reason why Plaintiffs had not been paid yet and he always promised again that they would be paid everything they were due soon.

176.

In reliance on Williams's assurances that all employees would be paid everything they were due very soon, Milchman chose to remain Williams's employee and to refrain from seeking alternative employment.

177.

As a result of Defendants' failure and/or refusal to pay Milchman any of the compensation and reimbursements which he was due, Plaintiff Milchman suffered great financial hardship.

178.

As a result of Defendants' failure and/or refusal to pay him the compensation he was due, and Defendant Williams's continued false representations regarding his intention to pay soon, Plaintiff Milchman incurred substantial debt and suffered substantial anxiety, loss of sleep, and emotional and mental distress.

Allegations Pertaining to Applicability and Coverage Under the FLSA

179.

On information and belief, each of the corporate Defendants is a private employer engaged in interstate commerce, and its gross revenues exceed $500,000 per year.

180.

The business purpose of each corporate Defendant is to provide cloud-based enterprise software management services to large multi-national corporations. All or most of each Defendant's actual or prospective clients are located outside the state of Georgia, and many of the employees perform their work from outside the state of Georgia, including Florida and Ohio.

181.

All employees of each of the Defendants handled goods and materials that have been produced for and/or moved in commerce as part of their regular and

primary job duties.  Such goods and materials include computers, computer software, office supplies, and mobile smartphones.

182.

Each of Defendants EWT, Carbon60, and Cloud Solutions is an "employer" under the FLSA, 29 U.S.C. § 203(d).

183.

Defendant Williams exercises operational control over Cloud Solutions, and exercised operational control over Carbon60 and EWT, respectively, when each was operational.  He was the founder of each company, was/is the chief executive officer responsible for all aspects of each company's operations, and had exclusive or primary oversight for hiring and management of personnel.

184.

Because Williams exercises(d) operational control over each corporate Defendant, Williams is also an "employer" under the FLSA, 29 U.S.C. § 203(d), and is jointly and severally liable for unpaid wages and other damages due to each of the Plaintiffs.  Williams employed each of the Plaintiffs throughout each Plaintiff's relevant time period.

185.

As an employer under the FLSA, all Defendants are subject to the minimum wage and maximum hours requirements of the FLSA, 29 U.S.C. §§ 206-07.

186.

All Defendants jointly employed Plaintiffs throughout the relevant time period.

187.

In addition to enterprise coverage applicable to each of the Defendants, each of the individual Plaintiffs is subject to individual coverage under the FLSA.

188.

Each Plaintiff regularly used the instrumentalities of interstate commerce in performing his or her work, including regular and recurrent use of interstate telephone, email, web-based communication, and mail.

189.

Plaintiffs regularly communicated with each other and with Defendant Williams and other employees via email, text message and phone, which communications often crossed state lines.

190.

Each Plaintiff was/is entitled to receive at least the federal minimum wage of $7.25 for each hour worked and premium pay at one and one half times the regular rate of pay for all hours worked in excess of 40 during each workweek.

191.

Many Plaintiffs regularly worked in excess of 40 hours each work week, especially during the first half of 2018.

192.

Defendants never paid Plaintiffs anything.

193.

Defendants have not maintained complete records of all hours worked by Plaintiffs during their employment as required by law.

## COUNT I
## VIOLATION OF THE FEDERAL FAIR LABOR STANDARDS ACT – FAILURE TO PAY A MINIMUM WAGE

194.

Plaintiffs incorporate by reference all of the preceding paragraphs of the Complaint.

195.

Defendants, as joint employers, have violated the FLSA, 29 U.S.C. § 206, by failing to pay minimum wages for any of the hours worked by each Plaintiff, as described above.

196.

Each Plaintiff worked numerous hours for Defendants but was never paid anything.

197.

Defendants knew, or showed reckless regard for the fact that they failed to pay a minimum wage as required under the FLSA.

198.

Defendants failed to accurately report, record, and/or preserve records of hours worked by Plaintiff, and thus failed to make, keep and preserve records sufficient to determine Plaintiff's wages, hours, and other conditions and practices of employment, in violation of the FLSA.

199.

Defendants' conduct as alleged herein was willful and in bad faith.

200.

Due to Defendants' willful violations of the FLSA, each Plaintiff is entitled to recover his or her unpaid overtime wages, plus liquidated damages in an equal amount, attorney's fees, and the costs of this litigation, pursuant to FLSA § 16, 29 U.S.C. § 216.

## COUNT II
## VIOLATION OF THE FEDERAL FAIR LABOR STANDARDS ACT – FAILURE TO PAY OVERTIME

201.

Plaintiffs incorporate by reference all of the preceding paragraphs of the Complaint.

202.

Defendants, as joint employers, have violated the FLSA, 29 U.S.C. § 207, by failing to pay an overtime premium for hours worked in excess of 40 in many workweeks by each Plaintiff, as described above.

203.

Each Plaintiff worked more than 40 hours in at least one workweek, and some in many workweeks, but no Plaintiff was ever paid anything.

204.

Defendants knew, or showed reckless regard for the fact that they failed to pay an overtime premium rate for hours worked in excess of 40 as required under the FLSA.

205.

Defendants failed to accurately report, record, and/or preserve records of hours worked by Plaintiff, and thus failed to make, keep and preserve records sufficient to determine Plaintiffs' wages, hours, and other conditions and practices of employment, in violation of the FLSA.

206.

Defendants' conduct as alleged herein was willful and in bad faith.

207.

Due to Defendants' willful violations of the FLSA, each Plaintiff is entitled
to recover his or her unpaid overtime wages, plus liquidated damages in an equal
amount, attorney's fees, and the costs of this litigation, pursuant to FLSA § 16, 29
U.S.C. § 216.

## COUNT III
## BREACH OF CONTRACT

208.

Plaintiffs incorporate by reference all of the preceding paragraphs of the
Complaint.

209.

Defendant EWT entered into a contract of employment with Plaintiffs Miller
and Brumbeloe, the terms of which called for each such Plaintiff to perform
services in exchange for compensation as described in the contract, including a
salary and various benefits.

210.

Defendant Carbon60 entered into a contract of employment with each of the
Plaintiffs excepting Hampton, and Defendant Cloud Solutions entered into a
contract of employment with each of the Plaintiffs, the terms of which called for
each such Plaintiff to perform services in exchange for compensation as described
in the contract, including a salary and various benefits.

211.

Defendant Williams entered into a contract of employment with each of the Plaintiffs, the terms of which called for each such Plaintiff to perform services in exchange for compensation as described in the contract, including a salary and various benefits.

212.

Each of Plaintiffs performed services for each of the Defendants under the contracts referenced above and thereby performed each contract of employment with each Defendant to which he or she was a party.

213.

None of the Defendants performed any of the contracts of employment with any of the Plaintiffs, as none of the Plaintiffs were ever paid any of the compensation they were promised.

214.

Each of the Defendants, including EWT, Carbon60, Cloud Solutions, and Williams, breached each Plaintiff's contract by failing to pay Plaintiffs any compensation.

215.

Each Plaintiff suffered damages flowing from each Defendant's breach of contract, including general damages and consequential damages.

216.

The breach of contract by each Defendant, including Defendant Williams, entitles each Plaintiff to recover all of his or her damages flowing from each Defendant's breach of contract.

## COUNT IV
## PROMISSORY ESTOPPEL

217.

Plaintiffs incorporate by reference all of the preceding paragraphs of the Complaint.

218.

Each Defendant, including Defendant Williams, made promises to each Plaintiff to pay each Plaintiff specified compensation in exchange for his or her services.

219.

Defendants should have expected each Plaintiff to rely on Defendants' promises.

220.

Each Plaintiff relied on Defendants' promises to his or her detriment, including by resigning other, reliable employment, becoming and remaining employed by Defendants, and refraining from seeking or obtaining alternative employment.

221.

Each Plaintiff's reliance on Defendants' promises was reasonable.

222.

Because each Plaintiff reasonably relied on Defendants' promises to his or her detriment, injustice can be avoided only by enforcing the promises made by Defendants, including Defendant Williams.

223.

Each Plaintiff should recover all of his or her damages as are equitable and necessary to prevent injustice from occurring, including attorney's fees and costs of litigation.

## COUNT V
## UNJUST ENRICHMENT

224.

Plaintiffs incorporate by reference all of the preceding paragraphs of the Complaint.

225.

Each Plaintiff conferred a substantial benefit on Defendant Williams, and on each of the corporate Defendants for which each such Plaintiff worked while performing services for Defendant Williams.

226.

As a result of the benefits conferred upon Defendant Williams and upon each of the corporate Defendants by Plaintiffs without compensation, each such Defendant was unjustly enriched.

227.

As an alternative to the breach of contract theory above, each Plaintiff should therefore recover from Defendants, including Defendant Williams, the value of the benefit conferred, under O.C.G.A. § 9-2-7 (Implied obligations to pay) and the doctrines of unjust enrichment and quantum meruit under Georgia law.

**COUNT VI**
**FRAUD**

228.

Plaintiffs incorporate by reference all of the preceding paragraphs of the Complaint.

229.

The corporate Defendants acting through Defendant Williams, and Defendant Williams individually, made numerous, regular and repeated false representations to Plaintiffs, including stating that Plaintiffs would be paid the compensation they were owed.

230.

Defendants, and especially Defendant Williams, made false representations to Plaintiffs with the requisite scienter to be actionable as fraud.

231.

Defendants, and especially Defendant Williams, made false representations to Plaintiffs with intent to deceive them, in order to induce them to continue to perform services for him and/or to refrain from resigning or seeking alternative employment.

232.

Each Plaintiff justifiably relied on Defendants' false representations.

233.

Each Plaintiff suffered damages as a result of Defendants' false and fraudulent representations.

234.

Each Plaintiff should recover all of his or her damages flowing from Defendants' false and fraudulent representations.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

235.

Plaintiffs incorporate by reference all of the preceding paragraphs of the Complaint.

236.

Defendant Williams intentionally misrepresented to Plaintiffs that he would be paying them very soon.  He did so over and over again, almost since the inception of EWT and continuing through to the present.  Despite the fact that he has not paid any of his employees in approximately seven months (as of the date of filing of this Complaint), he continues to tell them that their checks will be issued soon (often the next day), or that wire transfers are en route, or that they will be paid in some other way.  All of these statements were apparently false and were made with intent to cause them to suffer emotionally.

237.

Defendant Williams' repeated false statements to Plaintiffs regarding their pending pay was extreme and outrageous under the circumstances.  Many or all of the Plaintiffs fell into dire financial straits as a result of working for Williams for months without receiving any compensation.  Some incurred debt, sometimes maxing out their available credit; some cashed in retirement accounts in order to survive; some were forced to borrow money from friends and family; some were evicted from their residence; some lived with great conflict at home, with spouses and other family members, because they had taken a job that was not paying them anything and was thereby causing great financial, emotional, and resultant relational strain on their family; some attempted to live on one meal per day in an

effort to cut costs wherever possible, all based on Williams's repeated (apparently false) assurances that they would be paid soon.

238.

Plaintiffs suffered severe emotional distress, anxiety, loss of sleep, weight loss, and other physical and mental ailments as a result of Williams's intentional false statements to them.

## COUNT VIII
## VIOLATION OF THE FEDERAL FAIR LABOR STANDARDS ACT – RETALIATION (AS TO PLAINTIFF MILLER ONLY)

239.

Plaintiffs incorporate by reference all of the preceding paragraphs of the Complaint.

240.

Defendants, as joint employers, have violated the FLSA, 29 U.S.C. § 215(a)(3), by terminating Plaintiff Miller's employment in retaliation for her complaints about not being paid and her statement that if she were not paid she would have to seek legal counsel.

241.

Plaintiff Miller worked for Defendants for nearly four months without ever being paid anything – not even a minimum wage, and certainly not the $75,000 salary plus benefits promised to her by Defendant Williams.

242.

Throughout that time, Plaintiff Miller repeatedly asked when she would be paid, and Defendant Williams repeatedly told her (in a variety of ways) that she would be paid soon, but he never fulfilled those promises.

243.

In mid-April 2018, when Plaintiff Miller had been working for Defendant Williams for nearly four months without pay, and he had promised her over and over that she would be paid soon, she sent him a text message stating that she needed to be paid the next day or she would have no choice but to seek legal counsel.

244.

Plaintiff Miller's statement that she will seek legal counsel to assist with remedying Defendants' failure to pay her constitutes protected activity under the FLSA.

245.

In response to Plaintiff Miller's protected activity of complaining about not being paid and stating that she will have to get legal help, Defendant Williams terminated Plaintiff Miller's employment.  He sent her an email explaining that the reason for terminating her employment is that she stated she would see an attorney

if she did not get paid by a certain time, which email constitutes direct evidence (or at minimum strong circumstantial evidence) of retaliatory motive.

246.

As a result of Defendants' joint unlawful retaliatory termination of Plaintiff Miller's employment, Plaintiff Miller has sustained an additional period of unemployment and loss of wages.

247.

Due to Defendants' willful violations of the FLSA by retaliating against Plaintiff Miller, Plaintiff Miller entitled to recover back pay and front pay, plus liquidated damages in an equal amount, attorney's fees, and the costs of this litigation, pursuant to FLSA § 16, 29 U.S.C. § 216.

## **COUNT IX**
## **ATTORNEY'S FEES**

248.

Each Defendant, including Defendant Williams, has acted in bad faith, been stubbornly litigious, and/or caused each Plaintiff unnecessary trouble and expense, and as a result each Plaintiff is entitled to recover all of his or her attorney's fees pursuant to O.C.G.A. § 13-6-11 and other applicable state and federal law.

249.

By repeatedly promising to pay each Plaintiff what he or she was owed under the applicable contract of employment, Defendant Williams, acting on

behalf of himself and each of the corporate Defendants under which he was purporting to operate at the relevant time, has repeatedly admitted and acknowledged his debt to them, but has nevertheless continued to fail or refuse to pay it.  His refusal to pay was not an honest mistake but instead was prompted by a sinister motive.  As such, each Plaintiff is entitled to recover all of his or her attorney's fees pursuant to O.C.G.A. § 13-6-11 and other applicable state and federal law.

250.

The conduct of each and all Defendants necessitating this litigation, including Defendant Williams' repeated refusal to pay each Plaintiff what he admits he or she is due under his or her contract of employment, is without any legitimate justification under the law, and Defendants can assert no viable defense; as a result each Plaintiff is entitled to recover all of his or her attorney's fees pursuant to O.C.G.A. § 9-15-14 and other applicable federal and state law, including this Court's inherent power to award fees and costs.

## <u>COUNT X</u>
## <u>PUNITIVE DAMAGES</u>

251.

The actions of each Defendant, including Defendant Williams, showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences,

so as to entitle Plaintiffs to recover punitive damages under O.C.G.A. § 51-12-5.1 and other applicable law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand a **TRIAL BY JURY** and request the following relief:

a) A declaratory judgment that Defendants have violated the FLSA, 29 U.S.C. § 201, *et seq.*;

b) A judgment awarding Plaintiffs their unpaid wages pursuant to 29 U.S.C. §§ 206-207, liquidated damages as provided by 29 U.S.C. § 216, court costs and attorney's fees as provided by 29 U.S.C. § 216, and all other remedies allowed under the FLSA;

c) A judgment awarding Plaintiffs their actual, compensatory, consequential, punitive, and all other available damages, in an amount to be determined by the enlightened conscience of the jury;

d) Award Plaintiffs their attorney's fees;

e) Award Plaintiffs pre-judgment and post-judgment interest; and

f) Award Plaintiffs all other and further relief as this Court deems just and proper.

Respectfully submitted this 3rd day of August, 2018.

/s/ Lisa D. Taylor
Lisa Durham Taylor
Georgia Bar No. 235529
lisa@durhamtaylor.com
**DURHAM TAYLOR LLC**
1650 Whippoorwill Road
Watkinsville, Georgia  30677
Telephone:  (770) 235-1117
Facsimile:  (706) 478-6797

Attorney for Plaintiffs